**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMAL JOHNSON, | : | |
| | : | |
| Plaintiff, | : | Civil No. 10-5039 (RBK) |
| | : | |
| v. | : | |
| | : | |
| BRIAN BRADFORD, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

    JAMAL JOHNSON, Plaintiff <u>pro se</u>
    #648298
    South Woods State Prison
    215 Burlington Road South
    Bridgeton, New Jersey 08302

**KUGLER**, District Judge

    This matter was administratively terminated by this Court, by Order entered on October 20, 2010, because it appeared that Plaintiff's application for <u>in forma pauperis</u> ("IFP") status was incomplete and no filing fee had been paid.  (Docket entry no. 2).  On December 1 and 6, 2010, Plaintiff submitted a complete IFP application with his six-month prison account statement (Docket entry nos. 4 and 5), and asked that his case be re-opened, pursuant to the directive in this Court's October 20, 2010 Order.  Based on Plaintiff's affidavit of indigence, the Court will grant the application to proceed <u>in forma pauperis</u>

pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to re-open this matter and file the Complaint accordingly.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  On January 28, 2011, Plaintiff submitted a letter to the Court asking to add an claim with respect to his Complaint. (Docket entry no. 6).  For the reasons set forth below, the Court concludes that the Complaint should be dismissed without prejudice at this time.

## I. BACKGROUND

Plaintiff, Jamal Johnson ("Johnson"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Brian Bradford, Director of the Gateway Foundation, Inc.; Westley Dilks, New Jersey Department of Corrections ("NJDOC") Intermediary for Gateway; Ms. Malone, NuWay Supervisor at the South Woods State Prison ("SWSP"); Grace Cookwater, Gateway/NuWay Coordinator at ("SWSP"); and Karen Balicki, Administrator at SWSP.  (Complaint, Caption and ¶¶ 4b, 4c, and ## 3, 4 and 5 of ¶ 4).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this

screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Johnson alleges that, on or about August 6, 2010, at approximately 2:15 p.m., defendant Cookwater was "chastising" a Muslim participant in a NuWay meeting, for a group sanction. Specifically, Cookwater made mocking remarks about the Islamic religion and its practices, mimicked an Arabic prayer by mumbling as if she were speaking Arabic, and then screamed "Allahu-Akbar." Johnson alleges that Muslim and non-Muslim participants became "offended and upset." (Compl., ¶ 4e).

Johnson further complains that the other named defendants failed to supervise the actions of Cookwater, failed to enforce the rules and bylaws of the Gateway/NuWay program at SWSP, failed to protect plaintiff's rights, failed to discipline the employee for making discriminatory remarks, and downplayed the seriousness of the incident, thus showing indifference in violation of plaintiff's First, Eighth and Fourteenth Amendment rights. (Compl., ¶¶ 4 and 6).

On January 28, 2011, Johnson wrote to the Court asking to amend his Complaint to assert a claim that defendants violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc.1. (Docket entry no. 6). Plaintiff generally alleges that defendants continue to subject

plaintiff to "substantial burdens to the free exercise of his Islamic Religion." (Id.).

Johnson seeks $ 1.5 million in compensatory and punitive damages. He also seeks injunctive relief enjoining defendants from retaliating against any Muslim for exercising their civil rights at the SWSP NuWay program. Johnson asks for assigned counsel, and requests that any complaints filed by a Muslim with regard to this matter be joined together in one action and ruled as a class action. (Compl., ¶ 7).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

6

> plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard"

set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to

---

[2] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

## III. SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV. ANALYSIS

A. Harassment Claim

Plaintiff's main complaint stems from an incident on August 6, 2010, where defendant Cookwater made several discriminatory, harassing and offensive remarks to Muslim inmates. Johnson

9

generally asserts that defendant's conduct violated his First, Eighth and Fourteenth Amendment rights.

It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment. See Robinson v. Taylor, 204 Fed. Appx. 155, 156 (3d Cir. 2006); McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997)(rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.'"). see also Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir.997), abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008)("As for being subjected to abusive language directed at [one's] religious and ethnic background, verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.")(internal quotation marks omitted).

Indeed, allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner. See Jean-Laurent v. Wilkerson, 438 F. Supp.2d 318, 324-25 (S.D.N.Y. 2006)(pretrial detainee's claim of verbal abuse not cognizable under § 1983 because verbal intimidation did

10

not rise to the level of a constitutional violation); Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996)(threats and verbal harassment without physical injury or damage not cognizable in claim filed by sentenced inmate under § 1983). See also Price v. Lighthart, 2010 WL 1741385 (W.D. Mich. Apr. 28, 2010); Glenn v. Hayman, 2007 WL 894213, *10 (D.N.J. Mar. 21, 2007); Stepney v. Gilliard, 2005 WL 3338370 (D.N.J. Dec. 8, 2005)("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone ... no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp.2d 241, 244 (D.Me. 2005)). See also Moore v. Morris, 116 Fed. Appx. 203, 205 (10th Cir. 2004)(mere verbal harassment does not give rise to a constitutional violation, even if it is inexcusable and offensive, it does not establish liability under section 1983), cert. denied, 544 U.S. 925 (2005); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (dismissing prisoner's claim that defendant laughed at prisoner and threatened to hang him); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 WL 1532496 (E.D. Pa. June 29, 2005)("It is well established ... that ... verbal

harassment, ... standing alone, do[es] not state a constitutional claim")(citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D.Pa. 1995)).  See also Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (holding that verbal harassment and abuse are not recoverable under § 1983); Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987)(holding that racially derogatory remarks, although "unprofessional and inexcusable," are not "a deprivation of liberty within the meaning of the due process clause").

     Here, Johnson does not allege an accompanying violation that might allow the verbal harassment to state a separate due process violation or equal protection claim in violation of his Fourteenth Amendment rights.  Furthermore, at most, Johnson alleges that he was offended by the discriminatory remarks, but he does not allege any facts to show any injury or impediment to the practice or exercise of his religion for the claim to rise to the level of a violation of his First Amendment rights.  Indeed, the general allegations of "injury" in the Complaint are nothing more than the mere recitation of a legal conclusion without factual allegations sufficient at this time to support a claim that the defendants were verbally harassing plaintiff as a form of punishment or to deprive plaintiff of his constitutional rights under the First, Eighth and Fourteenth Amendments, as generally asserted.  Consequently, because the alleged verbal

harassment of Johnson was not accompanied by any injurious actions - or physical actions of any kind - by the defendants, Johnson fails to state a cognizable § 1983 claim for a violation of his First Amendment rights, his Fourteenth Amendment due process or Fourteenth Amendment equal protection rights, or his Eighth Amendment right to be free from cruel or unusual punishment. This claim will be dismissed accordingly.

B.  <u>Religious Land Use and Institutionalized Persons Act</u>

In his letter amendment received January 28, 2011 (Docket entry no. 6), Johnson asserts a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). RLUIPA governs the religious rights of incarcerated individuals at federally funded prisons. RLUIPA bars federally funded prisons from "impos[ing] a substantial burden on the religious exercise of a person ... unless the government demonstrates that imposition of the burden on that person ... (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling interest." 42 U.S.C. § 2000cc-1(a). To state a claim under RLUIPA, a prisoner must establish that his religious exercise has been "substantially burdened." Once a claimant satisfies this element, the burden shifts to the government to show that the burden on the prisoner's religious exercise furthers a "compelling governmental interest" and "is the least restrictive

13

means of achieving that interest." Washington v. Klem, 497 F.3d 272, 277 (3d Cir. 2007).

In order to be considered a "substantial burden", the plaintiff must demonstrate that the government's action pressured him to commit an act forbidden by his religion or prevented him from engaging in conduct or having a religious experience mandated by his faith. Muhammed v. City of New York Dep't of Corrections, 904 F. Supp. 161, 188 (S.D.N.Y. 1995)(citations omitted). The burden must be more than an inconvenience, it must be substantially interfere with a tenet or belief that is central to the religious doctrine. Id. (citations omitted); see also Jones v. Shabazz, 2009 WL 3682569, at *2 (5th Cir. 2009)(holding that a government action or regulation only creates a "substantial burden" on a religious exercise if it truly pressures an adherent to significantly modify his religious behavior and significantly violate his religious beliefs).

Here, the Complaint fails to allege sufficient facts to support his claim or that defendants' actions or inactions somehow substantially burdened his religious practices. His only allegation that defendant Cookwater verbally abused him and made a "mockery" of his Muslim religion on one occasion are conclusory and unsupported by specific facts. However, even if Johnson properly supported those allegations, such allegations are insufficient to state a claim for relief for the reasons already discussed in Part IV.A of this opinion. Therefore, the Court

finds that the allegations of the Complaint are inadequate to state a claim to relief under the RLUIPA that is plausible on its face, and his claim will be dismissed without prejudice accordingly.

C.  Supervisor Liability Claim

Finally, Johnson complains that the supervisory defendants, Brian Bradford, Westley Dilks, Ms. Malone and Karen Balicki, violated his First, Eighth and Fourteenth Amendment rights by failing to supervise Cookwater and allowing her to make discriminatory remarks about Muslims without disciplining her, and by failing to protect plaintiff from harm or to adequately address plaintiff's grievances concerning the August 6, 2010 incident.

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  See Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); Robertson v. Sichel, 127 U.S. 507, 515-16 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").  In Iqbal, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to

15

Bivens[3] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct. at 1948. Thus, each government official is liable only for his or her own conduct. The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct. Id., 129 S.Ct. at 1949.

Under pre- Iqbal Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal quotation marks omitted). "Particularly after Iqbal, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." Id. at 130.

---

[3] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

The Third Circuit has recognized the potential effect that Iqbal might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether Iqbal requires narrowing of the scope of the test. See Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in light of Iqbal, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official). Hence, it appears that, under a supervisory theory of liability, and even in light of Iqbal, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right. Williams v. Lackawanna County Prison, 2010 WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. See Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

17

Here, plaintiff provides no facts describing how the supervisory defendants allegedly violated his constitutional rights, i.e., he fails to allege facts to show that these defendants expressly directed the deprivation of his constitutional rights, or that they created policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation. In short, Johnson has alleged no facts to support personal involvement by the supervisory defendants, and simply relies on recitations of legal conclusions such that they failed to supervise or failed to protect plaintiff in violation of his First, Eighth and Fourteenth Amendment rights. These bare allegations, "because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950. Accordingly, this Court will disregard the Complaint's "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Iqbal, 129 S.Ct. at 1949, and dismiss the Complaint without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), because plaintiff has failed to state a claim against these supervisory defendants at this time.

Finally, the Court notes that plaintiff has asserted that the supervisory defendants failed to investigate and discipline Cookwater for the discriminatory remarks that she made after plaintiff filed a grievance. This claim fails to rise to the

level of a constitutional deprivation sufficient to state a claim under § 1983.  Indeed, "'an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'" Graw v. Fantasky, 68 Fed. Appx. 378, 2003 WL 21523251 (3d Cir. 2003)(unpubl.) (quoting unpubl. District Court opinion)(citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)). Cf. Burnside v. Moser, 138 Fed. Appx. 414, 416, 2005 WL 1532429 (3d Cir. 2005) (prisoners do not have a constitutionally protected right to a prison grievance process); Lewis v. Williams, 2006 WL 538546, *7 (D.Del. 2006)(failure to investigate a grievance does not raise a constitutional issue)(collecting cases). Compare Durmer v. O' Carroll, 991 F.2d 64, 69 (3d Cir. 1993)(summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions). Accordingly, this claim will be dismissed for failure to state a claim.

## IV.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed without prejudice, in its entirety as against all named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(B)(1), for failure to state a claim upon which relief may be granted at this time.  Plaintiff's request for appointment of

counsel and to have all other similar complaints filed by Muslim inmates at South Woods State Prison regarding this incident be ruled as a class action will be denied as moot.  An appropriate order follows.

<pre>
                                s/Robert B. Kugler
                                ROBERT B. KUGLER
                                United States District Judge
Dated: May 5, 2011
</pre>